UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLARD MORRIS, JR.,

    Plaintiff,

    v.

ASHLAND, INC.,

    Defendant.

No. 12 C 5487
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Willard Morris, Jr. brings this action against Ashland, Inc. pursuant to Illinois state law tort claims of retaliatory discharge and violation of the Illinois Whistleblower Act, 740 ILCS 174/1. Defendant now moves for summary judgment against Plaintiff on both counts. For the following reasons, Defendant's motion is granted.

## I. BACKGROUND

Plaintiff was employed by Defendant as a truck driver from October 2006 until March 4, 2010. Def.'s SOF ¶ 2. Plaintiff is a member of Teamsters, Local 705 Union. Compl. ¶ 11. When Plaintiff began his employment with Defendant, he signed documents indicating that he was familiar with, and would abide by Defendant's "Business Responsibilities" policy. This general policy included policies against employee dishonesty, as well as Defendant's "Zero Incident Culture" policy, which provided guidelines for reporting employee safety issues. Def.'s SOF ¶¶ 4-6.

*Defendant's alleged harassment and Plaintiff's alleged performance issues*

Plaintiff claims that on December 23, 2009, he was instructed by Mark Dwenger, Ashland's package dispatcher, to haul a load of hazardous waste that was four thousand pounds

1

over the allowable gross weight, and six thousand pounds over the allowable weight for the rear tandem of the trailer under the Illinois Vehicle Code. Pl.'s Add'l SOF ¶¶ 4, 5; 625 ILCS 5/15/-111. Plaintiff claims that Dwenger instructed him to deliver the load, and that he would pay any fine incurred. *Id*. at ¶ 6. Another supervisor told Plaintiff not to haul the load, and he was given a different trailer. Def.'s SOF ¶¶ 18, 19.

Plaintiff filed a near miss report on December 31, 2009 referencing the December 23 incident. *Id.* at 17. Approximately 45 minutes after filing the report, Plaintiff met with Anthony Kuk, Ashland's plant manager, who stated to Plaintiff that another employee had allegedly overheard Plaintiff claim on December 30 that he was going to file a false workers' compensation claim to "teach Mark [Dwenger] a lesson." *Id.* at ¶ 20. Defendant claims Kuk was not aware of Plaintiff's near miss report at that time. *Id.* at ¶ 22. Plaintiff alleges that Defendant was aware of the report, and denies making any statement regarding filing a false workers' compensation claim. Pl.'s Opp. to Def.'s SOF ¶¶ 14, 22.

Defendant claims that Plaintiff had performance issues, and that it began monitoring Plaintiff's productivity in November 2009. Def.'s SOF ¶¶ 10-12. Defendant alleges that in January 2010, Kuk spoke to Greg Engleking, Plaintiff's union steward, regarding Plaintiff's performance. *Id*. at ¶ 23.

*January 22 incident*

On January 22, Plaintiff met with Kuk, Engleking, and Okera Hollis, a bulk dispatcher, in Kuk's office. Def.'s SOF ¶ 25; Pl.'s Add'l SOF ¶ 15. Defendant alleges that the purpose of the meeting was to discuss Morris's performance issues. Def.'s SOF ¶ 25. Plaintiff claims that the purpose of the meeting was to object to harassment he was subjected to from Kuk. Pl.'s Opp. to Def.'s SOF ¶ 25; Pl.'s Add'l SOF ¶ 14. During the meeting, Plaintiff produced driver trip reports

2

that he had manually completed at home, to counter the company's position that Plaintiff was less productive than other drivers. Def.'s SOF ¶ 27. The forms were apparently used by the company before the company switched to electronic tracking. Def.'s SOF ¶ 28.

Kuk became angry upon seeing the reports, and stated to Plaintiff that they were company property, and that he could not take them with him. Pl.'s Add'l SOF ¶ 17; Def.'s SOF ¶ 28. Plaintiff attempted to leave the room, at which time Kuk moved to prevent Plaintiff from leaving. Pl.'s Add'l SOF ¶ 18; Def.'s SOF ¶ 29. Plaintiff claims that Kuk hit his shoulder and arm, causing him to fall and hit his face against the edge of the door. Pl.'s Add'l SOF ¶ 17; Def.'s SOF ¶ 18. Kuk told Hollis to call the police, and initially refused to let Plaintiff leave Kuk's office. Def.'s SOF ¶ 29; Pl.'s Add'l SOF ¶ 19. The police arrived and investigated the alleged assault. Def.'s SOF ¶¶ 30, 31. They concluded that there were no obvious signs of injury to substantiate a battery charge against Kuk. *Id.*

Plaintiff left Ashland's facility and drove to a nearby hospital, where he was diagnosed with a head injury, a concussion, and facial contusions. Pl.'s Add'l SOF ¶¶ 22, 23. Plaintiff filed a workers' compensation claim around February 19, for injuries sustained on January 22. *Id.* at ¶ 24. Defendant was aware of the workers' compensation claim. *Id.* at ¶ 26. On February 24, Plaintiff returned to his physician, and was further diagnosed with a nasal fracture and deviated septum that were initially missed January 22, and required surgery at a later date. *Id.* at ¶ 25.

*Reports, investigation, and termination*

Between January 23 and 24, emails were sent from Plaintiff's email account to Casey Jones, Ashland's Manager of Occupational Medicine, as well as executives at Ashland's parent company, alleging that Kuk had physically assaulted him. Def.'s SOF ¶¶ 36, 37. Plaintiff did not recall sending the emails. *Id.* at ¶ 38. Plaintiff called 1-800-ASHLAND, the company's hotline

3

for reporting safety concerns, reporting that Kuk had physically assaulted him, and that the police could have arrested Kuk for battery. *Id.* at ¶ 39.

On January 25, the company began investigating Plaintiff's allegations. Bob Suttles, Ashland's Manager of Corporate Security, and Lyndsay Murray, Human Resources, interviewed Kuk and received a written statement from him, in which he denied assaulting Plaintiff. Def.'s SOF ¶¶ 41, 42. Suttles and Murray interviewed and received a written statement from Hollis, who was on the phone with the police when the alleged assault occurred, but recounted that the contact between Kuk and Plaintiff was incidental. Pl.'s Opp. to Def.'s SOF ¶¶ 43, 44. Next, Suttles and Murray interviewed and received a written statement from Engleking, who stated that Kuk made forceful contact with Plaintiff while Plaintiff was trying to exit the office, causing Plaintiff to fall face-first into the door, and land near where Engleking was sitting. Pl.'s Opp. to Def.'s SOF ¶ 45. The investigators interviewed Plaintiff on February 18. *Id.* at ¶ 48.

In addition to conducting interviews with witnesses, Suttles and Murray received information from three Ashland union employees via 1-800-ASHLAND who claimed they had seen Plaintiff after the incident, and that he was not injured. Def.'s SOF ¶¶ 51-53. The investigators additionally interviewed the investigating officer and received a copy of the amended police report, which included Plaintiff's medical records and Engleking's statement. *Id.* at ¶¶ 54, 55. Suttles further received copies of the emails sent from Morris's account to Ashland's executives and Jones. *Id.* at ¶ 56. Suttles reviewed the evidence and determined that Plaintiff had reported several different versions of the incident, and that the police report and various witnesses indicated that no battery had occurred. *Id.* at ¶¶ 59, 61. Suttles concluded that Plaintiff falsely reported that Kuk assaulted him. *Id.* at ¶ 62. The company terminated Plaintiff on March 4 for dishonesty and fabrication of evidence, which violated company policies regarding

employee conduct. *Id.* at ¶63.

*Arbitration and lawsuit*

Plaintiff filed grievances on January 26, February 23, March 8, and April 9 regarding the January 22 incident and his termination. Compl. ¶ 64. The discharge grievance was arbitrated over a three-day hearing. Def.'s SOF ¶ 65. Plaintiff and the company were represented by counsel, ten witnesses provided sworn testimony, and exhibits were presented. *Id*. at ¶ 66. The arbitrator concluded that Defendant's investigation was fair and thorough, that Defendant had established that Plaintiff had made dishonest statements and fabricated evidence, and that Plaintiff's termination was for just cause. *Id.* at ¶¶ 73, 67, 72.

Plaintiff filed a Complaint in the Circuit Court of Cook County on January 20, 2012 against Defendant. Plaintiff was an Illinois resident at the time of the filing of the Complaint. Def.'s SOF ¶ 2. Defendant, a Kentucky corporation, did business at the time in Illinois. *Id* at ¶ 3. The Complaint initially contained four claims: retaliatory discharge against Ashland; violation of the Illinois Whistleblower Act against Ashland; battery against Ashland and Kuk; and false imprisonment against Ashland and Kuk. The court dismissed the battery and false imprisonment claims, leaving Ashland as the only defendant. Defendant removed the remaining counts to federal court under 28 U.S.C. § 1332.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining the existence of a genuine issue of material fact, a court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Weber v. Universities Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009) (citing *Anderson*, 477 U.S. at 249–50).

### III. DISCUSSION

A.     Retaliatory discharge

Plaintiff alleges that he was discharged in retaliation for: (1) seeking workers' compensation benefits under the Illinois Workers' Compensation Act resulting from the January 22 incident; or (2) filing a near miss report related to his refusal to haul a load of freight that exceeded the legal weight limit. Compl. ¶¶ 70, 73. Plaintiff does not establish a causal connection between either action and his termination.

*1. Workers' Compensation claim*

Federal courts apply Illinois state law to retaliatory discharge cases. *Gacek v. Am. Airlines, Inc.*, 614 F.3d 298, 303 (7th Cir. 2010). Illinois courts recognize a cause of action for retaliatory discharge when an employee is terminated because of his actual or anticipated exercise of workers' compensation rights. *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 357 (Ill. 1978). "To recover damages for the tort of retaliatory discharge predicated upon the filing of a workers' compensation claim, an employee must prove: (1) that he was an employee before the injury; (2) that he exercised a right granted by the Workers' Compensation Act; and, (3) that he was discharged and that the discharge was causally related to his filing a claim under the Workers' Compensation Act." *Clemons v. Mechanical Devices Co.*, 704 N.E.2d 403, 406 (Ill.

6

1998).

Illinois courts recognize that the retaliatory discharge tort is a "limited and narrow exception to the at-will employment rule," and have consistently narrowed its reach. *McGrath v. CCC Info. Servs., Inc.*, 731 N.E.2d 384, 388-90 (Ill. App. Ct. 2000). As a result, Illinois courts do not shift the burden of proof to the defendant to show that the discharge was not retaliatory after a plaintiff has made a *prima facie* retaliatory discharge claim. *Gacek*, 614 F.3d at 303. A plaintiff must affirmatively establish the elements of the cause of action, and while an employer may provide an alternative reason for a plaintiff's discharge, the employer is not required to do so. *Clemons*, 704 N.E.2d at 406. "The burden remains on the plaintiff to establish the elements of his cause of action…If the trier of fact rejects plaintiff's evidence, or instead accepts defendant's proffered reason for the termination, then the plaintiff has failed to meet his burden of proof." *Id.* at 407.

In this case, the first two elements of the retaliatory discharge claim concerning Plaintiff's workers' compensation claim are undisputed. The parties disagree as to whether Plaintiff satisfied the third element by establishing a causal connection between his filing a workers' compensation claim and his termination. "The employee bears the burden of establishing that his discharge was 'causally related' to his exercise of rights under the Workers' Compensation Act." *Coppert v. Cassens Transp. Co.*, No. 2-12-0877, 2014 IL App (2d) 120877-U at *5 (Ill. App. Ct. April 23, 2014) (citing *Miller v. J.M. Jones Co.*, 587 N.E.2d 654, 657 (Ill. App. Ct. 1992)). Plaintiff must ultimately prove that the Defendant's motive in discharging the employee was retaliation for filing a workers' compensation claim. *Hartlein v. Illinois Power Co.*, 601 N.E.2d 720, 730 (Ill. 1992). Direct evidence is not necessary to establish a retaliatory motive: Plaintiff "can carry his burden of proof by showing that defendant's explanation for

7

[discharging] him is not believable or that it raises a genuine issue of fact as to whether defendant was retaliating against him." *Herman v. Power Maint. & Constructors, LLC*, 903 N.E.2d 852, 862 (Ill. App. Ct. 2009).

If Defendant proffers a valid and nonpretextual basis for the termination, the causation element is not met. *Gonzalez v. Prestress Eng'g Corp.*, 551 N.E.2d 793, 797 (Ill. App. Ct. 1990). Though "[t]he issue of motive or intent is a question of material fact, not normally subject to summary judgment," where no dispute exists regarding material facts pertaining to an employer's purported basis for termination, summary judgment may be appropriate. *Palmateer v. Int'l Harvester Co.*, 489 N.E.2d 474, 476 (Ill. App. Ct. 1986); *See Bush v. Commonwealth Edison Co.*, 990 F.2d 928, 933-34 (7th Cir. 1993); *Goode v. American Airlines, Inc.*, 741 F. Supp. 2d 877, 894-96 (N.D. Ill. 2010). To survive a summary judgment motion where an employer provides an alternative basis for a plaintiff's termination, the non-movant must "produce evidence from which a rational factfinder could infer that the company lied about its proffered reasons for the employees' dismissal." *Fratto v. Am. Airlines, Inc.*, No. 94-C-7765, 1996 WL 288520, at *6 (N.D. Ill. May 30, 1996) (quoting *Schultz v. General Elec. Capital Corp.*, 37 F.3d 329, 333–34 (7th Cir. 1994)).

Defendant states that, in violation of Defendant's employment conduct policies, Plaintiff was dishonest and fabricated evidence in his reports that Kuk physically assaulted him. Defendant asserts that this dishonesty prompted Plaintiff's termination, not retaliation for filing Plaintiff's workers' compensation. Plaintiff argues that because there are contested facts regarding what occurred during the January 22 incident, it is possible that Defendant's claims are pretextual. The issue to be decided here is whether the company honestly terminated Plaintiff due to its belief that he fabricated evidence and was dishonest, or whether that proffered basis

was pretext for discharge based on the workers' compensation filing.

In *Goode*, the court recognized that a separate basis for termination, such as filing a fraudulent workers' compensation claim, or violating company rules, would be justified, noting that a plaintiff's request for workers' compensation benefits is all that is protected under Illinois law. *Goode*, 741 F. Supp. 2d at 892 (citing *Walker v. Borg-Auto. Automatic Transmission Sys. Corp.*, 88 F. Supp. 2d 878, 880 (N.D. Ill. 2000)). Even if Defendant was mistaken in its conclusion that Plaintiff fabricated evidence or was dishonest in his reports, "[a] mistake is different from pretext…as long as the belief [is] sincere it mean[s] that the plaintiff has not established the required form of causation." *Casanova v. American Airlines*, 616 F.3d 695, 698 (7th Cir. 2010).

Taking Plaintiff's allegations as true, though there may be debate as to what actually happened on January 22, Plaintiff does not offer any evidence to show that the Defendant's conclusion that Plaintiff falsified information in his reports was pretext. Defendant has shown that the company's conclusion was based on an investigation that included witness interviews and a review of Plaintiff's reports, which was upheld by a neutral arbitrator. Def.'s SOF ¶¶ 40-56, 65-70. Plaintiff has not provided evidence that challenges the validity of the investigation, or shows that the conclusion reached by the investigation was invalid, and pretext for his discharge. Plaintiff indicates that Defendant was aware of the workers' compensation claim, but does not show that the claim factored into the investigation or was the actual basis for termination, which he has the burden to prove. Pl.'s Add'l SOF ¶ 26; *Popadynec v. Cent. Locating Serv., Ltd.*, No. 94-C-7251, 1996 WL 134266 at *2-4 (N.D. Ill. Mar. 22, 1996).

Plaintiff does provide evidence that he and Kuk did not get along, and that Kuk may have had retaliatory animus toward Plaintiff for his performance issues. But that would be a separate

basis for termination from the workers' compensation claim, and Plaintiff does not in any event offer any facts linking Kuk to the termination decision. *See Meister v. Georgia-Pacific Corp.*, 43 F.3d 1154, 1160 (7th Cir. 1995) (affirming summary judgment for defendants where plaintiff only established retaliatory motive from person uninvolved in decision to terminate). Insofar as Plaintiff argues that Kuk physically assaulted him so that Plaintiff would file a workers' compensation claim for which the company would discharge him, the causal connection is far too tenuous. This is so, particularly considering that Defendant previously processed a workers' compensation claim for Plaintiff, as well as other employees who remained employed with the company, in addition to ultimately paying workers' compensation to Plaintiff for the January 22 incident. Def.'s SOF ¶ 79; Def.'s Mem. in Supp. Mot. Dismiss 5, 6.

2. *Near-miss report*

In Illinois, a general claim for retaliatory discharge must show that (1) an employee has been discharged; (2) in retaliation for the employee's activities; and (3) that the discharge violates a clear mandate of public policy. *Bourbon v. Kmart Corp.*, 223 F.3d 469, 472 (7th Cir. 2000) (citing *Hartlein*, 601 N.E.2d at 728). Plaintiff maintains the burden of proof in establishing retaliatory discharge. *Gacek*, 614 F.3d at 303. Proof of causation "is not met if the employer has a valid basis, which is not pretextual, for discharging the employee." *Hartlein*, 601 N.E.2d at 728. In retaliatory discharge cases, an employer is not required to come forward with an explanation for an employee's discharge, and it remains plaintiff's burden to prove the elements of the cause of action. *Clemons*, 704 N.E.2d at 406.

Neither party here disputes the first element. Defendant argues that Plaintiff has not shown a causal relation between Plaintiff's termination and the filing of the near miss report. Plaintiff argues that genuine issues of material fact regarding what took place on January 22

require denial of summary judgment. But Plaintiff fails to establish causation, essentially for the same reasons as the workers' compensation claim. Plaintiff does not show that the company's proffered reason for his termination, dishonesty and fabrication of evidence, was pretextual, or an invalid basis for his termination. Again, whether the company was correct in its conclusion is not material. *Casanova*, 616 F.3d at 698. As long as the company honestly believed its legitimate basis for termination, the discharge was not invalid or pretextual. *Popadynec*, 1996 WL 134266 at *2-4. Plaintiff again raises facts that Kuk may have had retaliatory animus for Plaintiff as a result of the near miss report. But Plaintiff does not establish any link between Kuk's arguably bad faith interest in Plaintiff's termination and Defendant's conclusion that Plaintiff fabricated evidence in a report, or the decision to terminate him on that basis.

Although Plaintiff more fully develops the argument in the context of the Whistleblower claim, Plaintiff asserts that the court may infer from suspicious timing that an adverse action may be retaliatory. *Benuzzi v. Bd. of Educ.*, 647 F.3d 652, 656-66 (7th Cir. 2011). Though suspicious timing "will rarely be sufficient in and of itself to create a triable issue," *Stone v. Indianapolis*, 281 F.3d 640, 644 (7th Cir. 2002), "[o]ccasionally…an adverse action comes so close on the heels of a protected act that an inference of causation is sensible." *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011). Here, however, I do not find that the record supports such an inference.

Two factors to consider in assessing suspicious timing are temporal proximity, and whether there was an intervening act between the protected activity and the adverse employment action. *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009); *Benuzzi*, 647 F.3d at 666. In *Casna*, the court found an "extreme case," where the plaintiff was terminated the day after she complained about discriminatory treatment. *Casna*, 574 F.3d at 427. Similarly, in *Benuzzi*, the

11

defendant imposed restrictions on plaintiff's employment the day after plaintiff's deposition. *Benuzzi*, 647 F.3d at 661. The court found an "incredibly short span of time" between plaintiff's protected activity and the subsequent adverse employment action, while also determining a separate suspension that was two months removed from when the plaintiff filed an EEOC claim was "insufficient to give rise to a similar inference." *Id.* at 666. The court also noted that "because no alleged intervening events might have reasonably justified the reprimands" following plaintiff's deposition, that suspicious timing led to a reasonable inference of pretext. *Id*.

Here, several months passed between the filing of the near miss report and Plaintiff's termination, weakening the inference that the events were connected. More importantly, Defendant has shown that an intervening event occurred; Defendant's conclusion that Plaintiff filed false reports with the company "might reasonably have justified" Plaintiff's termination. *Id*. Because Plaintiff has failed to establish that the company's conclusion was not honestly believed or pretextual, the intervening event undermines any inference of causality based on suspicious timing.

B.     Violation of the Illinois Whistleblower Act

The Illinois Whistleblower Act states "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation." 740 ILCS 174/20. "In order to sustain a cause of action under the [Illinois Whistleblower] Act, a plaintiff must establish that (1) he refused to participate in an activity that would result in a violation of a state or federal law, rule, or regulation, and (2) his employer retaliated against him because of that refusal." *Sardiga v. Northern Trust Co.*, 948 N.E.2d 652, 657 (Ill. App. Ct. 2011). The causal element requires the Plaintiff "to show that

refusal to participate in an illegal activity caused [the plaintiff's] employer to retaliate against [him]." *Nelson v. Levy Home Entm't, LLC*, No. 10-C-3954, 2012 WL 403974, at *8 (N.D. Ill. February 8, 2012).

Plaintiff argues that he was terminated in retaliation for refusing to violate the Illinois Vehicle code – specifically, that he refused to haul a load of hazardous freight that exceeded the lawful weight limit. Compl. ¶ 67. Plaintiff cites *Gaines v. K-Five Construction Corp.*, 742 F.3d 256 (7th Cir. 2014), to support the proposition that refusing to drive a truck under conditions that violate certain laws may raise issues of material fact as to whether the refusal is a protected activity, making summary judgment inappropriate. Defendant does not challenge whether refusing to drive a truck in violation of Illinois law is a protected activity. Rather, Defendant argues that Plaintiff fails to make the requisite causal link between his termination and his refusal to haul the overweight load. Defendant argues further that an employer is entitled to summary judgment where the employee does not show the employer wanted the employee to violate the law. *Lucas v. The County of Cook*, 987 N.E.2d 56, 67 (Ill. App. Ct. 2013).

Again, Defendant argues that Plaintiff's termination was a result of the company's belief that Plaintiff fabricated information in reports regarding the January 22 incident. "[O]nce a defendant has adequately challenged the elements of a plaintiff's claim, it becomes the plaintiff's burden to 'identify specific facts in the record that demonstrate[] a genuine issue for trial.'" *Robinson v. Stanley*, No. 06-C-5158, 2011 WL 3876903, at *7 (N.D. Ill. August 31, 2011) (quoting *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 647 (7th Cir. 2011)). As explained under Count I, Plaintiff has failed to provide factual support to link his termination with filing the near miss report in connection with the overweight load. Plaintiff has similarly failed to provide factual support to link his termination with his related refusal to haul the load

13

itself. Plaintiff's suspicious timing argument fails for the same reasons it fails with respect to the near miss report.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.


ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: August 15, 2014